## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

KEVIN ERIC GRANNUM,

               Plaintiff,

    v.

LEWIS G. EVANGELIDIS,
DAVID TUTTLE,
CAPTAIN M. JACKSON,
LIEUTENANT M. STONE, and
LIEUTENANT M. FOLEY,

               Defendants.

**CIVIL ACTION
NO. 4:18-cv-40137-TSH**

## REPORT AND RECOMMENDATION

**August 27, 2019**

Hennessy, M.J.

      On August 13, 2018, Plaintiff Kevin Eric Grannum ("Plaintiff"), a pre-trial inmate presently housed at the Worcester County Jail and House of Correction ("WHC"), commenced the instant action, pro se, against Worcester County Sheriff Lewis G. Evangelidis ("Sheriff Evangelidis"), Superintendent David Tuttle ("Superintendent Tuttle"), Captain M. Jackson ("Captain Jackson"), Lieutenant M. Stone ("Lieutenant Stone"), and Lieutenant M. Foley ("Lieutenant Foley," and together with Sheriff Evangelidis, Superintendent Tuttle, Captain Jackson, and Lieutenant Stone, "Defendants"). The complaint alleges violations of Plaintiff's First Amendment right to freely exercise his religion. See generally dkt. no. 1 ("Complaint"). Specifically, the complaint alleges that Defendants, in their individual and official capacities, violated Plaintiff's constitutional rights by refusing to provide him a diet that comports with his religious beliefs. Id.; see also dkt. no. 28-1.

Defendants have moved to dismiss the complaint for failure to state a claim upon which relief may be granted. Dkt. no. 28. Plaintiff has opposed the motion. See dkt. nos. 31, 32. In addition, Plaintiff has filed several motions to amend his complaint. See dkt. nos. 36, 37, 41. This Order issues pursuant to a referral from District Judge Timothy S. Hillman respecting the above motions (see dkt. no. 42), which are ripe for adjudication.

For the reasons stated herein, the undersigned recommends that Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) be granted in part and denied in part; that Plaintiff's January 2, 2019 motion to amend certain of the complaint's existing allegations, and to include additional allegations and legal theories (dkt. no. 36) be denied as moot; that Plaintiff's January 2, 2019 motion to add as a defendant Sergeant Richard Cavalieri (dkt. no. 37) be denied as withdrawn; and that Plaintiff's motion to amend the complaint to add as defendants Corrections Officer Hatch and Sergeant Warren and to include supplemental claims against them (dkt. no. 41) be granted.

## I.      BACKGROUND[1]

Plaintiff has been incarcerated at WHC since July 2018. Complaint ¶ 3. On or about July 25, 2018, Plaintiff informed Lieutenant Stone that he is Muslim and required a Kosher diet.[2] Id. ¶ 10. On July 30, 2018, Plaintiff executed and submitted a (i) Special Diet Request Form and (ii) Religious Sincerity Questionnaire. Dkt. no. 28-1, at pp. 1–2. On the former, he listed his religion as "Islamic," and expressed his dietary restriction as "Halal." Id. at 1. On the questionnaire, he listed his religion as "Muslim" and "Islamic," and provided brief answers to the

---

[1] The Court accepts as true the facts alleged in the complaint and considers those facts in light of Plaintiff's supplemental submissions. See McBride v. Mass. Com'n Against Discrimination, 677 F. Supp. 2d 357 (D. Mass. 2009) (citing Gray v. Poole, 275 F.3d 1113, 1115 (D.C. Cir. 2002) (noting that when confronted with a motion to dismiss, a federal court may consider a pro se plaintiff's supplemental filings, other than a formal complaint, in construing the litigant's claims).

[2] Plaintiff states that a kosher diet conforms to the dietary strictures of both Judaism and Islam. Id. ¶ 13.

remaining form questions.  Id. at 2.  The last question of the questionnaire inquired of Plaintiff's dietary restrictions.  Id.  Plaintiff responded "no pork products."  Id.

Plaintiff's special diet request was denied by Lieutenant Stone[3] on August 2, 2018.  Id. at 1; Complaint ¶ 11.  According to Plaintiff, the reason given was that WHC does not serve pork, so Plaintiff's claimed dietary restriction of "no pork products" does not conflict with the diet served the general population.  Complaint ¶ 10; dkt. no. 28-1, at p. 2.  Plaintiff sent a follow-up letter to Lieutenant Stone to contest the decision but received no response.  Complaint ¶ 10.  He then brought the matter to the attention of Lieutenant Foley, who suggested Plaintiff file a grievance.  Id.  Plaintiff also informed Lieutenant Captain Jackson of the matter, who responded, "All of a sudden you['re] a Muslim?"  Id.  Plaintiff thereafter submitted a grievance and wrote a letter to Superintendent Tuttle to contest the denial.  Id. ¶ 11.  Plaintiff did not receive a response from Superintendent Tuttle, and his grievance was denied.

Plaintiff commenced the instant action by filing a complaint in this Court on August 13, 2018.  That same day, he filed a motion for a preliminary injunction ordering the Defendants to provide him a religious diet.  Dkt. no. 4.  On August 16, 2018, Plaintiff filed a proposed order to show cause for a temporary restraining order, which sought the same relief as requested in his motion for a preliminary injunction.  Dkt. no. 8.  On August 28, 2019, the Court denied Plaintiff's proposed order to show cause.  Dkt. no. 14.  On September 19, 2018, Plaintiff filed a document styled "Amended Complaint," which included an additional claim against Defendants and additional prayers for relief.  Dkt. no. 17.  On or about November 6, 2018, Plaintiff began receiving meals comporting with his religion after Lieutenant Stone approved Plaintiff for a

---

[3] The complaint alleges that Lieutenant Stone was WHC's lead supervisor of kitchen operations at all time relevant to this matter.  Complaint ¶ 7.

Halal diet.  Dkt. no. 32-1, at p. 5.  On December 11, 2018, Judge Hillman denied Plaintiff's motion for a preliminary injunction, concluding that Plaintiff failed to establish a likelihood of success on the merits and that he could not establish irreparable harm since his request for a religious diet had since been approved.  Dkt. no. 34.

On November 8, 2018, Defendants moved to dismiss the complaint.  Dkt. no. 28. Plaintiff opposed the motion on November 26, 2018.  Dkt. no. 32; see also dkt. no. 31 (supplemental opposition).  On January 2, 2019, Plaintiff filed two motions to amend the complaint.  The first motion duplicates a document Plaintiff filed on September 19, 2018, which sought to amend the complaint as a matter of course.  Compare dkt. no. 17 (September 19, 2018 filing), with dkt. no. 36 (January 2, 2019 motion to amend).  The second motion filed on January 2, 2019 seeks to add as a defendant Sergeant Richard Cavaliere and to assert claims against him. Dkt. no. 37.  On February 13, 2019, Plaintiff filed a third motion to amend his complaint, this time seeking to add as defendants Sergeant Warren and Officer Hatch and to assert claims against them.  Dkt. no. 41.  The February 13, 2019 motion also seeks to voluntarily dismiss any claims against Sergeant Cavaliere.  See id.

## II.    DEFENDANTS' MOTION TO DISMISS

### A.  Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. at 555 (internal citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has

acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). Indeed, plausible "means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels [the Court] 'to draw on [its] judicial experience and common sense.'" Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (quoting Iqbal, 556 U.S. at 679).

Despite this generous standard, "Rule 12(b)(6) is not entirely a toothless tiger . . . . The threshold for stating a claim may be low, but it is real." Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989) (quotation omitted). The complaint must therefore "allege a factual predicate concrete enough to warrant further proceedings." DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) (emphasis in original). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Dismissal is appropriate if a plaintiff's well-pleaded facts do not "possess enough heft to show that [the] plaintiff is entitled to relief." Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

The court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)). "Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment." Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (quoting Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008)). There lies

an exception to this rule "for documents the authenticity of which [is] not disputed by the parties; for official public records; for documents central to [a plaintiff's] claim; or for documents sufficiently referred to in the complaint." <u>Rivera</u>, 575 F.3d at 15 (quoting <u>Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 267 F.3d 30, 33 (1st Cir. 2001)).

Notwithstanding the above, the Court must apply a liberal standard where, as here, the Plaintiffs' complaint was filed <u>pro se</u>. <u>Sergentakis v. Channell</u>, 272 F. Supp. 3d 221, 224 (D. Mass. 2017) (citing <u>Gibbs v. SLM Corp.</u>, 336 F. Supp. 2d 1, 5 (D. Mass. 2004)). Accordingly, Plaintiff's complaint will "only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) (internal quotation omitted).

**B. <u>Analysis</u>**

While Defendants' motion to dismiss is based solely on a First Amendment theory, Plaintiff has also alleged[4] (<u>see</u> dkt. no. 17) a violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2200cc <u>et seq.</u> The undersigned thus will consider both. <u>See</u> <u>Sanchez v. Mitchell</u>, No. 16-10415-LTS, 2016 WL 6780289, at *1 (D. Mass. Nov. 15, 2016) (concluding the same).

Inmates "do not forfeit all constitutional protections by reason of their . . . confinement." <u>Bell v. Wolfish</u>, 441 U.S. 520, 545 (1979). They retain certain protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion." <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1987) (citing <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972) (per curiam)). However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying

---

[4] Section IV.B.1, <u>infra</u>, provides further explanation.

our penal system." Id. (alteration in original) (quoting Price v. Johnston, 334 U.S. 266, 285

(1948)). "To ensure that courts afford appropriate deference to prison officials, [the U.S.

Supreme Court has] determined that prison regulations alleged to infringe constitutional rights

are judged under a 'reasonablebess' test less restrictive than that ordinarily applied to allege

infringements of fundamental constitutional rights." Id. at 349 (citing Jones v. N.C. Prisoners'

Labor Union, Inc., 433 U.S. 119, 128 (1977)).

Like the First Amendment, RLUIPA "protects institutionalized persons who are unable

freely to attend to their religious needs and are therefore dependent on the government's

permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S.

709, 721 (2005). Specifically, it restricts the burdens government may place on an inmate's free

exercise rights:

> No government shall impose a substantial burden on the religious exercise of a
> person residing in or confined to an institution . . . even if the burden results from
> a rule of general applicability, unless the government demonstrates that
> imposition of the burden on that person—
> (1)       is in furtherance of a compelling governmental interest; and
> (2)       is the least restrictive means of furthering that compelling governmental
> interest.

42 U.S.C. § 2000cc-1(a). The statute provides a private cause of action to "assert a violation . . .

as a claim or defense in a judicial proceeding and [allows] appropriate relief against a

government."[5] Id. § 2000cc-2(a). However, it does not authorize claims against individual

---

[5] "Government" is defined in relevant part as: (i) a State, county, municipality, or other governmental entity created
under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in
clause (i); and (iii) any other person acting under color of State law." Id. § 2000cc-5(4)(A)(i)–(iii).

defendants in their individual capacities.  Id. § 2000cc-1(a)).[6]

The parties do not dispute the constitutionality of WHC's requirement that an inmate apply in writing for a special religious diet.  While the First Circuit has not yet spoken directly on the issue, "other circuits indicate that reasonable restrictions on an inmate's access to religious diets are acceptable, particularly where the inmate has not complied with procedures that call into question the sincerity of his belief."  Sanchez, 2016 WL 67880289, at *2 (collecting cases).  Requirements of this nature, even if they substantially burden inmates' First Amendment rights, are permissible if they reasonably relate to legitimate penological interests.  See Turner v. Safley, 482 U.S. 78, 89 (1987) ("When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.").

Rather, Plaintiff alleges that Defendants, either directly or via some supervisory capacity, violated RLUIPA and the First Amendment right to free exercise by denying Plaintiff's request for a religious diet based on one response on his sincerity questionnaire.  The complaint seeks an injunction preventing Defendants from denying Plaintiff a religious diet, as well as declaratory and monetary relief.

1. Sovereign Immunity and Qualified Immunity

As a preliminary matter, Plaintiff's damages claims against Defendants in their official capacities fail as Defendants are immune from those claims under the Eleventh Amendment. Canales v. Gatzunis, 979 F. Supp. 2d 164, 171 (D. Mass. 2013) ("It is well established . . . that neither states nor state officials sued in their official capacities for damages are 'persons' for

---

[6] A claim under RLUIPA includes four elements.  Spratt v. R.I. Dep't of Corr., 482 F.3d 33, 38 (1st Cir. 2007).  "On the first two elements, (1) that an institutionalized person's religious exercise has been burdened and (2) that the burden is substantial, the plaintiff bears on the burden of proof."  Id.  "Once a plaintiff has established that his religious exercise had been substantially burdened, the onus shifts to the government to show (3) that the burden furthers a compelling governmental interest and (4) that the burden is the least restrictive means of achieving that compelling interest."  Id.

purposes of § 1983." (citing <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 n.10 (1989)));

<u>Tolman v. Finneran</u>, 171 F Supp. 2d 31, 36 (D. Mass. 2001) (quoting <u>Pennhurst State Sch. &</u>

<u>Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984)) ("In the absence of consent a suit in which the

State or one of its agencies or departments is named as the defendant is proscribed by the

Eleventh Amendment."); <u>see also</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985) (holding that a

claim against a state agent in his official capacity should be treated as a suit against the state

entity.  In other words, "a suit against a state official in his or her official capacity is not a suit

against the official but rather is a suit against the official's office." <u>Will</u>, 491 U.S. at 71 (citing

<u>Brandon v. Holt</u>, 469 U.S. 464, 471 (1985)).  Thus, I will assess Plaintiff's claims against

Defendants in their individual capacities only.

If in a Rule 12(b)(6) motion to dismiss a defendant raises an affirmative defense that is

obvious on the face of the responded-to pleading, a court may consider the defense in its

assessment of the motion.  <u>Aldahonda-Rivera v. Parke Davis & Co.</u>, 882 F.2d 590, 592 (1st Cir.

1989).  Here, Defendants' motion to dismiss raises the defense of qualified immunity.  Dkt. no.

28, at pp. 3–4.  This defense is obvious on the face of the complaint and I will consider it in light

of Plaintiff's allegations.

A defendant in a § 1983 action is entitled to qualified immunity from damages for civil

liability if the defendant's conduct "does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800,

818 (1982) (citations omitted).  The purpose of the defense is to "limit the exposure of public

officials to damages actions, thereby fostering the effective performance of discretionary

functions in the public sector." <u>Pagán v. Calderón</u>, 448 F.3d 16, 31 (1st Cir. 2006) (citing

<u>Harlow</u>, 457 U.S. at 807).  The doctrine "'gives ample room for mistaken judgments' by

protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  Hudson v.

Maloney, 326 F. Supp. 2d 206, 210 (D. Mass. 2004) (quoting Rivera v. Murphy, 979 F.2d 259,

263 (1st Cir. 1992)).  To determine if a defendant is entitled to qualified immunity, this Court

asks whether: (1) the plaintiff's allegations, if true, establish a constitutional violation; (2) the

right that was allegedly violated was clearly established at the time of the challenged conduct;

and (3) a similarly situated reasonable official would have understood that the conduct violated

the constitutional right at issue.  Jordan v. Carter, 428 F.3d 67, 72 (1st Cir. 2005).

      In the Court's view, the doctrine of qualified immunity does not warrant dismissal.  The

case law on which Defendants rely fails to persuade the undersigned that application of the

doctrine is appropriate, at least at this stage of proceedings.  For example, Defendants cite

Sanchez v. Mitchell, where Judge Sorokin concluded that qualified immunity subjected an

inmate's claims to dismissal after the defendant officers removed the inmate from the facility's

kosher diet list because on multiple occasions the inmate was seen purchasing, trading for, and

eating non-kosher food items.  2016 WL 6780289, at *1–2.  Judge Sorokin further concluded

that the defendants' conduct did not violate clearly established statutory or constitutional rights

of which a reasonable person would have known.  Id. at *2.  Yet here, unlike Sanchez, Plaintiff

was denied a religious diet at the outset, not after having been placed on one and after

committing infractions, against facility policy, that reasonably call into question the inmate's

religious sincerity.  Further, the remaining cases to which Defendants cite help to explain the

doctrine of qualified immunity but assess its application at the summary judgment stage with

developed records.  See, e.g., Harlow, 457 U.S. at 800; Rivera, 979 F.2d at 259; cf. Giragosian v.

Bettencourt, 614 F.3d 25, 29 (1st Cir. 2010) ("It is not always possible to determine before

discovery has occurred whether a defendant is entitled to qualified immunity, and courts often evaluate qualified immunity defenses at the summary judgment stage.").

Moreover, Defendants' motion to dismiss argues that Plaintiff was denied a religious diet because the only dietary restriction Plaintiff listed on his sincerity questionnaire was "no pork products." However, on his Special Diet Request Form, which was submitted along with the sincerity questionnaire, Plaintiff reported that his religion is Islam and the dietary restriction requiring his placement on a special diet is "Halal." Dkt. no. 28-1, at p. 1. It is plausible to believe that a state official would understand that denying a religious diet to an inmate because the facility does not serve pork would work a First Amendment and/or RLUIPA violation where the inmate stated on one form that his religion requires him to observe a "Halal" diet and on another that his religion proscribes the consumption of pork. For this reason, it is the undersigned's view that Defendants are not entitled to qualified immunity at this stage of the proceedings. A more developed record[7] would be necessary for the Court to conclude that the denial of Plaintiff's diet request did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. In other words, the Court cannot at this time determine that the denial of Plaintiff's religious diet request was objectively lawful. See Pagán, 448 F.3d at 31 (stating that "the doctrine does not shield public officials who, from an objective standpoint, should have known that their conduct was unlawful") (citations omitted).

---

[7] For example, Plaintiff annexed to his opposition to Defendants' motion to dismiss a letter from Lieutenant Stone dated November 15, 2018. See dkt. no. 32-1, at p. 5. The letter states that Plaintiff's July 2018 request for a religious diet was denied because, inter alia, Plaintiff was observed purchasing non-halal products from the WHC canteen. Id. The complaint does not contain such an allegation, and importantly, neither does Defendants' motion to dismiss. Moreover, the letter post-dates the filing of the instant action and approval of Plaintiff's religious diet request.

2. Plaintiff's Claim for Injunctive Relief

The complaint contains a cause of action for a preliminary injunction ordering Defendants to provide Plaintiff a religious diet that conforms to his religious beliefs. It is established that an injunction is not a cause of action, but a remedy. Koufos v. U.S. Bank, N.A., 939 F. Supp. 2d 40, 46 (D. Mass. 2013) (first citing Wentworth Precious Metals, LLC v. City of Everett, No. 11-10909-DPW, 2013 WL 441094, at *15 (D. Mass. Feb. 4, 2013); then citing Green v. Parts Distrib. Xpress, Inc., No. 10-11959-DJC, 2011 WL 5928580, at *5 (D. Mass. Nov. 29, 2011)). Injunctive relief, as a remedy, may be available if Plaintiff succeeds on the merits of a remaining claim. See id. Moreover, it appears that Defendants granted Plaintiff's request for a religious diet as of November 6, 2018 at the latest.[8] Accordingly, the undersigned recommends that this cause of action be dismissed.

3. Mootness

Defendants argue that Plaintiff's complaint is moot because Defendants have since approved Plaintiff's request for a religious diet. Dkt. no. 28, at p. 5. Specifically, Defendants contend that "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome, or alternatively, . . . [that Plaintiff] no longer has a personal stake in the outcome of the controversy." Id. (quoting Thomas R.W. v. Mass. Dep't of Educ., 130 F.3d 477, 479 (1st Cir. 1997)). This argument overlooks that while changed circumstances might render moot a request for injunctive relief, they might not fully address past deprivations of law. Put another way, that Defendants granted Plaintiff's request for a religious diet three months after he

---

[8] As noted herein, the Court may consider certain evidence outside of the pleadings—including official public records and other documents central to a plaintiff's claim—without converting a motion to dismiss to one for summary judgment. See Alt. Energy, Inc., 267 F.3d at 33. Defendants have annexed to their motion a printout from WHC entitled "Meal Count Report," which purports to show that Plaintiff's request for a religious diet has been granted. Dkt. no. 28-2, at p. 1. Moreover, Plaintiff acknowledges in a letter of the same date that he has been receiving halal meals since November 6, 2018. See dkt. no. 30.

submitted his request does not necessarily moot Plaintiff's constitutional deprivation claims predicated on allegations of harm that occurred prior to the religious accommodation. For this reason, the undersigned finds unpersuasive Defendants' argument that the complaint is moot and should be dismissed because Plaintiff's request for a religious diet was approved on or about November 6, 2018.

### 4. Supervisory Claims

It is established that "[i]n a § 1983 suit . . . where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Denson v. Gelb, No. 14-14317-DPW, 2015 WL 4271481, at *11 (D. Mass. July 13, 2015) (quoting Iqbal, 556 U.S. at 677). Thus, "[f]or a supervisor to be held liable for a supervisee's conduct, liability must be premised on the supervisor's 'own acts or omissions.'" Id. at *12 (quoting Whitfield v. Meléndez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005)). "Absent direct participation, a supervisor may only be held liable where (1) the behavior of his subordinates results in a constitutional violation and (2) the supervisor's action or inaction was 'affirmatively linked' to the behavior in the sense that it could be characterized as 'supervisory encouragement, condonation, or acquiescence' or 'gross negligence . . . amounting to deliberate indifference.'" Id. (quoting Whitfield, 431 F.3d at 14) (alterations omitted) (emphasis in original). Facts showing no more than a supervisor's mere negligence respecting his subordinate's misconduct are not enough to make out a claim of supervisory liability. Guadalupe-Báez v. Pesquera, 819 F.3d 509, 515 (1st Cir. 2016).

Here, the complaint fails to set forth any factual basis to demonstrate an affirmative link between Sheriff Evangelidis and Plaintiff's alleged claims. The complaint's sole mention of

Sheriff Evangelidis appears in the complaint's party listing, and states that "he is legally responsible for the overall operation of departments and the Worcester County Jail." Complaint, at p. 2. Plaintiff argues in his opposition that Sheriff Evangelidis was given notice of Plaintiff's claims prior to the commencement of this action (see dkt. no. 32, at p. 4), but such notice fails to demonstrate an affirmative link between Sheriff Evangelidis and the alleged conduct giving rise to Plaintiff's claims. Also absent is any allegation that Sheriff Evangelidis is responsible for implementing or overseeing a custom or policy that deprives inmates of their right to meaningfully exercise their religious beliefs. In other words, there are no allegations in the complaint that Sheriff Evangelidis actually knew or tacitly approved of the alleged conduct that resulted in the denial of Plaintiff's request for a religious diet. Furthermore, Sheriff Evangelidis's responsibility for the overall operation of WHC does not, by itself, subject him to liability in the instant matter. See Whitfield, 431 F.3d at 14; Denson, 2015 WL 4271481, at *11. Accordingly, the undersigned recommends that all claims against Sheriff Evangelidis be dismissed.

Plaintiff's claims against Superintendent Tuttle fail for the same reasons as do those against Sheriff Evangelidis. The complaint alleges Plaintiff wrote a letter to Superintendent Tuttle following the denial of his religious diet request, and that a response never came. Dkt. no. 4, at p. 1. There are no allegations that Superintendent Tuttle implemented or monitored the WHC dietary program, or that he took part in the decision-making that resulted in the denial of the religious diet request. In the undersigned's view, the complaint's allegations do not possess enough heft to render plausible First Amendment or RLUIPA claims against Superintendent Tuttle. See Iqbal, 556 U.S. at 687 (noting that plausibly means "more than a sheer possibility"). Accordingly, these claims should be dismissed as well.

5. <u>Claims Against Lieutenant Foley</u>

Plaintiff's sole allegation respecting Lieutenant Foley is that he instructed Plaintiff to submit a grievance in response to Lieutenant Stone's denial of the religious diet request, and that Lieutenant Foley knew the grievance process would further delay any opportunity for Plaintiff to freely exercise his religion. Complaint ¶ 10. These allegations do not make out a plausible claim against Lieutenant Foley. There is no allegation that the latter had authority to make decisions respecting inmates' diets, or that he personally participated in denying Plaintiff's diet request. To the contrary, the complaint alleges that Lieutenant Foley provided Plaintiff with instructions on how to challenge the denial. For these reasons, Plaintiff has failed to allege a factual predicate concrete enough to state a plausible claim against Lieutenant Foley and warrant further proceedings against him. <u>See</u> <u>DM Research, Inc.</u>, 170 F.3d at 53. The undersigned recommends that all claims against Lieutenant Foley be dismissed.

6. <u>Claims Against Captain Jackson</u>

Plaintiff alleges that Captain Jackson, who at times relevant to the instant action was assigned to Modular Unit L, the unit in which Plaintiff is detained, abridged Plaintiff's First Amendment rights and his rights under RLUIPA. Specifically, the complaint alleges that Captain Jackson stated "All of a sudden you['re] a Muslim?" after Plaintiff told him about the recent denial of his religious diet request. The complaint further alleges after Plaintiff submitted his grievance, Captain Jackson informed him that Lieutenant Stone was on vacation and that the grievance therefore would take some time to process. <u>See</u> Complaint ¶ 11. These statements, taken as true, do not allege a factual predicate concrete enough to warrant further proceedings against Captain Jackson. <u>See</u> <u>DM Research, Inc.</u>, 170 F.3d at 55. The pleaded facts simply do not possess enough heft to make out a plausible First Amendment or RLUIPA claim. <u>See</u> <u>Ruiz</u>

Rivera, 521 F.3d at 84.  There is no allegation that at the time of the alleged violation of Plaintiff's rights, Captain Jackson had anything to do with inmate dietary requests or restrictions, or that his statements worked a violation of Plaintiff's constitutional protections.  Indeed, Captain Jackson's statement about Plaintiff's religious affiliation is consistent with Plaintiff's prior testimony in this action: in his motion for a preliminary injunction, Plaintiff stated that he requested a diet change after he converted to Islam.  See dkt. no. 5, at p. 1.  Accordingly, the undersigned recommends that Plaintiff's claims against Captain Jackson be dismissed.

    7.  <u>Claims Against Lieutenant Stone</u>

In the undersigned's view, the complaint states plausible First Amendment and RLUIPA claims against Lieutenant Stone.  Respecting Plaintiff's First Amendment claim, Defendants argue that Plaintiff has failed to state a claim because "it is undisputed that Plaintiff did not pass the sincerity test . . . because he listed his sole dietary restriction as "no pork products."  Dkt. no. 28, at p. 4.  Defendants allege that Plaintiff's challenge therefore takes issue with WHC's internal procedure of inquiring of inmates' religious sincerity, "a procedure which does not violate the First Amendment."  <u>Id.</u>  But, as noted above, on his Special Diet Request Form, submitted to Lieutenant Stone with the sincerity questionnaire, Plaintiff reported that he was Muslim and listed his dietary restriction as "Halal."  Lieutenant Stone denied Plaintiff's special diet request notwithstanding this information.  The sole reason Defendants offer for the denial is that Plaintiff stated he was proscribed from consuming pork.  Whether Lieutenant Stone considered all of Plaintiff's responses, from both his Special Diet Request Form and Religious Sincerity Questionnaire, is unknown, as is whether it was reasonable to deny Plaintiff a religious diet based on one answer given on the sincerity questionnaire.  Accordingly, it is the

undersigned's view that the allegations and pleaded facts possess enough heft to state a plausible First Amendment claim against Lieutenant Stone.

The same holds true for Plaintiff's RLUIPA claim. He alleges that the denial of his religious diet request forced him to eschew certain meals or, alternatively, violate the strictures of his religious beliefs. Dkt. no. 1-3, at p. 2. As noted above, the statute prohibits state officials from placing a substantial burden on the religious exercise of an inmate unless they can demonstrate that the imposition of the burden furthers a compelling governmental interest and is the least restrictive means of doing so. 42 U.S.C. § 2000cc-1(a). While the undersigned has no opinion on whether this claim (or any claim) can withstand summary judgment, it alleges enough to withstand dismissal at this stage of the proceedings. Here, Plaintiff was denied a diet that comports with religious beliefs he alleges he sincerely holds, and whether such denial worked a substantial burden on his religious exercise is a fact question for another day.

Accordingly, the undersigned recommends that Defendants' motion to dismiss be denied inasmuch as it seeks dismissal of Plaintiff's claims against Lieutenant Stone in her individual capacity.

8. <u>Plaintiff's Supplemental Claims for Injunctive Relief</u>

The complaint requests that the Court require Defendants to label all food products at WHC in order to protect inmates from inadvertently ordering food items that are not compatible with their religious beliefs. Plaintiff further requests this Court to restrict the amount of time WHC officials may spend assessing a special diet request. These prayers for relief should be dismissed. "'[I]ncidental effects of government programs, which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary

to their religious beliefs' are not a substantial burden." Sanchez, 2016 WL 6780289, at *3

(quoting Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 450 (1988)). While

labeled canteen items might make it easier for Plaintiff to identify certain food products, the

complaint does not demonstrate that the facility's management of food operations has a tendency

to coerce individuals into acting contrary to the dictates of their religions, nor does it demonstrate

that WHC's general administrative oversight of special diet requests coerces non-compliance

with inmates' religious principles.

    9. Fourteenth Amendment Claim

        Lastly, Plaintiff alleges that the denial of his religious diet request abridged his

Fourteenth Amendment right to equal treatment. Specifically, he alleges that he was denied a

kosher diet, which WHC regularly provides to Jewish inmates and which also comports with the

dietary prohibitions of Islam. This claim is conclusory at best, and the complaint lacks any

factual predicate to support the allegation.[9] Moreover, neither Plaintiff's Special Diet Request

Form nor his Religious Sincerity Questionnaire expressly requests a "kosher" diet. See dkt. no.

28-1, at pp. 1-2. Accordingly, the undersigned recommends that this claim be dismissed in its

entirety.

## IV.    PLAINTIFF'S MOTIONS TO AMEND THE COMPLAINT

        Plaintiff has filed several unopposed motions to amend his complaint. See dkt. no. 36

(motion to amend existing allegations and to include additional allegations and legal theories);

dkt. no. 37 (motion for leave to add as a defendant Sergeant Richard Cavalieri and amend

---

[9] Moreover, the Meal Count Report annexed to Defendants' motion to dismiss shows that as of November 6, 2018, more Muslim inmates than Jewish inmates participated in religious diet programs at WHC. See dkt. no. 28-2, at p. 11 see also Alt. Energy, Inc., 267 F.3d at 33 (noting that certain documents outside the pleadings may be considered on a motion to dismiss).

complaint to include claims against same); dkt. no. 41 (motion for leave to add as defendants Corrections Officer Hatch and Sergeant Warren and to include claims against same). I briefly address each in turn.[10]

## A. <u>Legal Standard</u>

Federal Rule of Civil Procedure 15 permits a plaintiff to amend his complaint once as a matter of course within twenty-one days of service of a responsive pleading. FED. R. CIV. P. 15(a)(1)(B). Thereafter, a plaintiff "may amend its pleading only with the opposing party's consent or the court's leave." FED. R. CIV. P. 15(a)(2). It is established that leave to amend is to be "freely given when justice so requires" unless the amendment "would be futile, or reward . . . undue or [promote] intended delay." <u>Resolution Tr. Corp. v. Gold</u>, 30 F.3d 251, 253 (1st Cir. 1994); <u>see also</u> FED. R. CIV. P. 15(a)(2). "The spirit of the rule is that a case should be decided on the merits, not because of missteps . . . in pleading.'" <u>Sweeney v. Keystone Provident Life Ins. Co.</u>, 578 F. Supp. 31, 34 (D. Mass. 1983) (citing <u>United States v. Hougham</u>, 364 U.S. 310, 317 (1960)).

When considering a motion for leave to amend, the trial court must first consider whether the proposed new claims are futile." <u>Smith v. Mitre Corp.</u>, 949 F. Supp. 943, 945 (D. Mass. 1997). It must review for futility under the 'standard that applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6).'" <u>Strahan v. AT&T Mobility, LLC</u>, 270 F. Supp. 3d 535, 544 (D. Mass.

---

[10] As a preliminary matter, I note that all three motions fail to comply with Local Rules 7.1(a)(2) and 15.1(b). The former forbids the filing of any motion unless the movant certifies that he has conferred with his adversary and attempted in good faith to resolve or narrow the issue. L.R. 7.1(a)(2). The latter requires a party moving to amend a pleading to add a new party to serve the motion upon the proposed party at least fourteen days in advance of filing the motion, together with a separate document stating the date on which the motion will be filed, and further requires the movant to certify that such advance service has been made. <u>See</u> L.R. 15.1(b). These failures provide independent grounds to deny Plaintiff's motions; leniency accorded <u>pro se</u> litigants does not void the obligation to satisfy procedural requirements. <u>See</u> <u>Larkin v. Forensic Health Servs., Inc.</u>, No. 12-11791-JLT, 2013 WL 3491112, at *2 (D. Mass. July 9, 2013) (citing <u>Ahmed v. Rosenblatt</u>, 118 F.3d 886, 890 (1st Cir. 1997)). Notwithstanding the above, and for the benefit of a complete record in light of Judge Hillman's referrals, the undersigned will assess the substance of each request.

2017) (quoting <u>Adorno v. Crowley Towing & Transp. Co.</u>, 443 F.3d 122, 126 (1st Cir. 2006) (alteration omitted).  Indeed, "[i]f leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the accuracy of the 'futility' label is gauged by reference to the liberal criteria of . . . 12(b)(6)."  <u>Hatch v. Dep't for Children, Youth & their Families</u>, 274 F.3d 12, 19 (1st Cir. 2001).

**B.  <u>Analysis</u>**

1.  <u>January 2, 2019 First Motion to Amend (dkt. no. 36)</u>

The first motion to amend Plaintiff filed on January 2, 2019 is duplicative of Plaintiff's September 19, 2018 filing styled "Amended Complaint."  <u>Compare</u> dkt. no. 17 (September 19, 2018 amendments to complaint), <u>with</u> dkt. no. 36 (first motion filed on January 2, 2019).  While the September 19, 2018 filing is not an "Amended Complaint" <u>per</u> <u>se</u>, it comprises a list of amendments Plaintiff sought to make to his original complaint.  <u>See</u> dkt. no. 17.  Pursuant to Federal Rule of Civil Procedure 15(a), a plaintiff may amend a pleading once, as a matter of course, within twenty-one days of service of the original pleading.  FED. R. CIV. P. 15(a)(1)(A)(i).  The record indicates that Defendants were not served with process until October 26, 2018.  <u>See</u> dkt. nos. 22–26.  Thus, it is the Court's view that Plaintiff, acting <u>pro</u> <u>se</u>, intended to and did amend his complaint as a matter of course on September 19, 2018 upon filing a list of amendments to his original pleading.  <u>See</u> dkt. no. 17.

Because the January 2, 2019 motion to amend (dkt. no. 36) is identical to Plaintiff's September 19, 2018 filing (dkt. no. 17), I recommend that the instant motion (dkt. no. 36) be denied as moot.  The amendments contained in the January 2, 2019 motion have already been asserted and alleged as a matter of course.  <u>See</u> dkt. no. 17.

2. <u>January 2, 2019 Second Motion to Amend (dkt. no. 37)</u>

Plaintiff's second January 2, 2019 motion to amend seeks to add Sergeant Richard

Cavalieri as a party defendant and to assert claims against him. Dkt. no. 37. However, in a

subsequent motion to amend, filed February 13, 2019, Plaintiff requests "to remove Sergeant

Richard [Cavalieri] from [the] civil action." <u>See</u> dkt. no. 41, at p. 1. While Sergeant Cavalieri

has not yet been made a defendant in this action, nor has the Court allowed any amendment

asserting claims against him, the Court understands Plaintiff's February 13, 2019 motion as

withdrawing the January 2, 2019 motion to add Sergeant Cavalieri as a defendant and claims

against him. <u>See</u> dkt. no. 37. Accordingly, the undersigned recommends that Plaintiff's second

January 2, 2019 motion to amend (dkt. no. 37) be denied.[11]

3. <u>February 13, 2019 Motion to Amend (Dkt. no. 41)</u>

Finally, Plaintiff's February 13, 2019 motion to amend seeks to add as defendants Officer

Hatch and Sergeant Warren, and to assert claims against them based on conduct that occurred at

WHC in January and February of 2019. <u>See</u> dkt. no. 41. Plaintiff's motion amounts to a request

to add two additional defendants and to supplement the complaint.

Federal Rule of Procedure 15 states in relevant part:

> On motion and reasonable notice, the court may, on just terms, permit a party to
> serve a supplemental pleading setting out any transaction, occurrence, or event
> that happened after the date of the pleading to be supplemented. The court may
> permit supplementation even though the original pleading is defective in stating a
> claim or defense. The court may order that the opposing party plead to the
> supplemental pleading within a specified time.

---

[11] Sergeant Cavalieri is not a named defendant, nor are there actual (as opposed to prospective) allegations or claims
against him at this time. As such, it would be inappropriate to grant Plaintiff's February 13, 2019 motion to amend
(dkt. no. 41) insofar as it seeks to dismiss Sergeant Cavalieri as a defendant and withdraw all claims against him. In
other words, this Court cannot dismiss from an action an individual who is not yet a party defendant, nor can it strike
claims that do not yet exist.

FED. R. CIV. P. 15(d). Here, Plaintiff's proposed filing alleges that for several days in January 2019, Sergeant Warren placed Plaintiff in an unheated cell, with temperatures no higher than 40 degrees, to retaliate against Plaintiff for filing the instant action and submitting grievances with respect to his religious meal request. Dkt. no. 41, at p. 2. Plaintiff alleges that Sergeant Warren forbade Plaintiff from shielding the windows to warm the cell, and that Sergeant Warren's conduct constituted cruel and unusual punishment under the Eighth Amendment. Id. Plaintiff further alleges that Officer Hatch, who was supervised by Sergeant Warren at the time, placed Plaintiff in the same cold cell in February 2019 and refused to heat Plaintiff's meals in retaliation for filing the instant complaint and grievances. Id.

I conclude that the proposed claims against Sergeant Warren and Officer Hatch sufficiently relate to the claims within Plaintiff's original pleading; Plaintiff alleges the complained-of conduct was retaliatory and responsive to Plaintiff's original complaint filing. Moreover, the prospective claims arose after the original complaint was filed. Finally, given that the complained-of conduct occurred in January and February 2019, and Plaintiff filed this motion to amend on February 13, 2019, see dkt, no. 41, there is no evidence that Plaintiff delayed in seeking to plead these additional claims. I thus turn to futility.

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must show that: (1) the defendant acted under color of state law (2) to deprive the plaintiff of a right, privilege, or immunity guaranteed by the Constitution or laws of the United States. Am. Mfrs. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999). An individual defendant may not be liable under § 1983 absent personal involvement in the alleged deprivation. Perez Olivi v. Gonzalez, 384 F. Supp. 2d 536, 544 (D.P.R. 2005). Indeed, personal involvement is a "prerequisite to an award of damages." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986).

Plaintiff alleges that Sergeant Warren and Officer Hatch are liable both individually and in their official capacities as arms of the state. Dkt. no. 41, at p. 1. To the extent Plaintiff seeks to plead monetary damages claims pursuant to 42 U.S.C. § 1983 against either Sergeant Warren or Officer Hatch in their official capacities, such claims are futile pursuant to the Eleventh Amendment and should not be allowed. See supra § II.B.1 (discussing sovereign immunity and precedent therefor). However, insofar as Plaintiff alleges that both Sergeant Warren and Officer Hatch are liable in their individual capacities, the motion should be allowed. In light of the Court's obligation to accept the pleadings as true, the prospective allegations seem plausible on their face. Moreover, Defendants have not opposed the motion.

## Conclusion

For the above reasons, the undersigned recommends that Defendants' motion to dismiss (dkt. no. 28) be DENIED inasmuch as it seeks dismissal of all claims against Lieutenant Stone in her individual capacity, and that it be GRANTED in all other respects.[12] The undersigned further recommends that Plaintiff's motion to amend his complaint (dkt. no. 41) to add as defendants Officer Hatch and Sergeant Warren, and to assert claims against them based on conduct that occurred at WHC in January and February of 2019, be GRANTED inasmuch as it seeks to plead Eighth Amendment claims against Officer Hatch and Sergeant Warren in their

---

[12] The parties are notified that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of service of this Report and Recommendation. The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See FED. R. CIV. P. 72(b)(2). The United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See, e.g., United States v. Diaz-Rosado, 857 F.3d 89, 94 (1st Cir. 2017); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).

individual capacities only.  Finally, the undersigned recommends that Plaintiff's two other

motions to amend the complaint (dkt. nos. 36 and 37) be DENIED in their entirety.


/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge